**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE C. (JAY) CROSSON, PH.D, <br><br> Plaintiff, <br><br> v. <br><br> TMF HEALTH QUALITY INSTITUTE *et al.*, <br><br> Defendants. | Civil Action No. 20-18800 (ZNQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint of Plaintiff Jay Crosson ("Plaintiff"), filed by Defendants TMF Health Quality Institute ("TMF"), Stephen D. Thomas ("Thomas"), Debbie Lovato ("Lovato"), and Thomas Manley ("Manley")[1] (collectively, "Defendants"), for lack of personal jurisdiction, improper venue, and failure to state a claim. (ECF No. 18.)  Alternatively, Defendants argue that the Court should transfer the case to the Western District of Texas.  Plaintiff opposes the motion. (ECF No. 24.) Defendants filed a reply. (ECF No. 25.)

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED;** the Court lacks personal jurisdiction over Defendants.

---

[1] The Court will refer to Thomas, Lovato, and Manley as the "Individual Defendants."

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This employment dispute arises from alleged retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12 *et seq.*, by a Texas employer against a former employee and New Jersey resident, who worked for the company remotely from his office in New Jersey for approximately two years before being terminated. For purposes of the present motion to dismiss, the factual allegations set forth in the Amended Complaint, which are recounted below, are taken as true. *See* ECF No. 11 ("Am. Compl.").

A.      **The Parties**

Plaintiff is a New Jersey citizen, who resides in Highland Park, New Jersey and who was previously employed by Defendant TMF as a Quality Improvement Executive for Research and Assessment. *Id.* ¶ 1. According to Plaintiff, he worked for TMF "from his office in New Jersey." *Id.*

Defendant TMF, a Texas 501(c)(3) nonprofit corporation with its principal place of business in Austin, Texas, is "a Quality Improvement Organization in the business of improving care provided to Medicare beneficiaries through cooperative efforts with the healthcare community." Am. Compl. ¶¶ 2, 32; *see* Thomas Decl. ¶ 6, ECF No. 19-3. Defendant Thomas, a Texas citizen, is TMF's Chief Human Resources Officer. Am. Compl. ¶ 3; Thomas Decl. ¶ 1. Defendant Lovato, a Texas citizen, is the Head of Business Development at TMF. Am. Compl. ¶ 4; Lovato Decl. ¶ 1, ECF No. 19-1. Defendant Manley, also a Texas citizen, is the Chief Executive Officer of TMF. Am. Compl. ¶ 5; Manley Decl. ¶ 1, ECF No. 19-2.

B.      **Plaintiff's Employment at TMF**

On September 13, 2018, Plaintiff accepted an offer to work remotely for TMF from his office in New Jersey. Am. Compl. ¶ 42. Plaintiff was hired as the Quality Improvement Executive

2

for Research and Assessment, and reported directly to TMF's Chief Medical Officer, Russell Kohl. *Id.* ¶¶ 43–44. According to Plaintiff, he was recruited for the position by Kohl, who conducted an interview with Plaintiff via teleconference while Plaintiff was in New Jersey and who subsequently facilitated a phone interview with Thomas and Manley. *Id.* ¶ 14.

Plaintiff alleges that TMF "expected Plaintiff to conduct his regular duties and maintain his productivity from his New Jersey office." *Id.* ¶ 19. TMF "provided Plaintiff with a company-issued laptop and remote access software for Plaintiff to work from his desk in New Jersey." *Id.* "[I]t was an express and substantial condition of Plaintiff's employment that he work from his office in New Jersey," and "Plaintiff frequently conducted data analysis, meetings, and conference calls from his desk in New Jersey." *Id.* When Plaintiff was required to travel, he attended meetings and conferences in Maryland, Virginia, Florida, Washington D.C., and Canada. *Id.* ¶ 27. Although Plaintiff did not have an assigned office in Texas, he also visited the TMF headquarters in Texas "a handful of times between 2018 and 2019," and was reimbursed for his travel expenses. *Id.*

During the course of his employment, "Plaintiff was responsible for the Data Analytics Group where he mentored senior professionals, led staff recruitment, and strategically managed resources across multiple projects." *Id.* ¶ 46. In addition, Plaintiff "increased billable hours within the Data Analytics group by 30%"; "designed and implemented a company-wide writing program"; "provided subject matter expertise and quality assurance reviews across a multitude [of] proposals potentially worth tens of millions of dollars"; and "led the adoption and implementation of new accounting and business development software." *Id.* ¶¶ 47–51. Plaintiff alleges his substantial contributions to the company are evidenced by positive performance evaluations and a February 21, 2020 bonus acknowledging those contributions. *Id.* ¶¶ 52–53.

### C. Plaintiff Raises Concerns About Diversity and Inclusion at TMF

Beginning in April 2020, Plaintiff "repeatedly attempted to broaden the company's antiquated policies and initiatives in connection with diversity matters" after having noticed "a number of red flags." *Id.* ¶ 54. On April 28, 2020, Plaintiff held a conference call with TMF Human Resource Specialist, Terri Shea, "to discuss the educational qualifications on professional level job descriptions that Plaintiff was working on as part of his duties to reorganize the analytics group." *Id.* ¶¶ 55–56. Plaintiff alleges that "Ms. Shea had been repeatedly resisting the addition of educational qualifications" for the job descriptions and that during the call Ms. Shea stated that the educational requirements should not be included in the job listings at issue because "black people do not get masters and doctoral degrees at the same rates." *Id.* ¶¶ 56–58. Plaintiff objected to this statement as being "unequivocally racist," ended the call, and reported the "racist behavior and comments" to his supervisor, who instructed him to report it to TMF's Director of Contracts and Compliance, Ty Clift. *Id.* ¶ 61. That same day, Plaintiff recounted the incident in a lengthy email to Mr. Clift, in part claiming that "[b]y lowering the educational expectations for these positions, TMF presents a less inviting workplace to minority candidates who have the appropriate training." *Id.* ¶ 62.

Approximately two weeks after the incident, Mr. Clift responded to Plaintiff and explained that Ms. Shea "made her comments from the perspective of being the person at TMF who maintains our Affirmative Action Plan (AAP), and interfaces with the EEOC." *Id.* ¶ 67. Mr. Clift further stated that "adding hard requirements for advanced degrees . . . would create EEO risks" and that "[t]hose risks can be mitigated by stating the higher degree is 'preferred', and/or by allowing substitution of a bachelors plus specific years of experience or certifications." *Id.* However, after surveying similar job listings from TMF's competitors with educational

4

requirements, Plaintiff concluded "Ty Clift was covering up diversity issues." *Id.* ¶ 71. According to Plaintiff, "[a]fter countless back and forth and focused attention from upper-management on the racist comments made by Ms. Shea, the complaint and conduct were found to be unsubstantiated." *Id.* ¶ 74.

Plaintiff recounts several other instances in which his alleged efforts to increase diversity and inclusion at TMF were met with purported resistance. In June 2020, following the death of George Floyd, "Plaintiff reached out to Russell Kohl to suggest that the company make a statement in response to express solidarity with the Black community and to show support for the company's minority employees." *Id.* ¶ 79. However, Plaintiff alleges he "received nothing but pushback and consternation" and that TMF refused to issue a statement. *Id.* ¶¶ 84, 86. In July 2020, Plaintiff noticed that an analytical staff member had been called by the wrong name and misgendered during a call by two separate employees, including Defendant Lovato. *Id.* ¶¶ 91–94. Plaintiff took it upon himself to correct the "microaggressions" via email and alerted Russell Kohl "of the need for leadership to address the issues." *Id.* ¶ 95. But no further action was taken. *Id.* Later in July 2020, Plaintiff "became concerned about the new hire screening process for his analytics team as it appeared that no Black or Latino candidates had made it through the screening." *Id.* ¶ 96. However, when Plaintiff asked Human Resources to share the demographics of the applicant pool, the department refused, explaining that "sharing the demographics would violate Equal Employment Opportunity rules because . . . the information [could be used] to discriminate against the applicants that passed through the screening process." *Id.* ¶ 98. That same month, Plaintiff also expressed his concerns with the company's unconscious bias training to Russell Kohl, contending that the training actually "perpetuated the racist and discriminatory nature of the workplace" and was factually inaccurate. *Id.* ¶¶ 99–101.

In addition to these more general concerns about diversity, Plaintiff, who identifies as Jewish, alerted Russell Kohl that "employees ha[d] made comments that were uncomfortably close to the two classic anti-Semitic tropes of 'pushy' and 'cheap' behavior" and that Plaintiff had been told at numerous points that he "does not speak Texan." *Id.* ¶ 103. These concerns went unaddressed. *Id.* Then, in September 2020, Defendant Manley sent a company-wide "CEO Update" email, which included information about upcoming holidays, but noticeably omitted any mention of Rosh Hashanah and Yom Kippur. *Id.* ¶ 106. Rather than "aid his efforts to cure prejudice in a predominantly white company," Plaintiff alleges that "Defendants resisted his ideas, made racist comments, and proceeded to insult him and his own religion." *Id.* ¶ 107.

### D.     TMF Terminates Plaintiff's Employment

According to Plaintiff, despite his "multiple positive performance reviews, congratulatory emails about his efforts, and [] substantial performance bonuses, Defendants manufactured a slew of baseless complaints in a sham investigation against Plaintiff in retaliation to his diversity efforts and attempts to stamp out discrimination in the workplace." *Id.* ¶ 112. On September 8, 2020, Plaintiff was informed via email by Defendant Thomas that a complaint had been filed against him by a TMF employee. *Id.* ¶ 113. The email communicating notice of the complaint to Plaintiff stated that "several personnel in the Business Development Office allege that you have demonstrated a pattern of obstructive, disrespectful, and rude behavior." *Id.* The email further stated that an investigation would be initiated which might result in disciplinary action. *Id.* Plaintiff alleges he "was shocked by this development, but immediately knew the complaint was pure retaliation and an effort to orchestrate his termination." *Id.* ¶ 115.

On October 7, 2020, Plaintiff was issued a draft report regarding the investigation and given five days to respond to the allegations against him. *Id.* ¶ 118. The report summarized several

6

incidents that TMF deemed to be "a form of bullying," including instances where Plaintiff, among other things, described the work of other employees as "terrible" and conducted himself in a manner that was "rude and condescending" and "not conducive to collaboration." *Id.* Plaintiff denied the allegations in the report and responded to each in writing via email on October 9, 2020. *Id.* ¶ 144. Plaintiff alleges that he received no response to his email denying the complaints, was never interviewed, and was never asked to provide documents regarding the alleged incidents. *Id.* ¶¶ 145–46.

On October 13, 2020, Defendants terminated Plaintiff's employment via email and hard-copy letter sent to Plaintiff's New Jersey office. *Id.* ¶ 147. According to the included Separation Agreement, Plaintiff was terminated "due to a reduction in force." *Id.* ¶ 149. Plaintiff alleges he did not sign the Separation Agreement and therefore is not bound by its terms. *Id.* ¶ 151. Plaintiff claims the stated reasons for his termination "constitute a thinly veiled attempt to cover-up a pretextual and unlawful retaliatory termination." *Id.* ¶ 150. Specifically, Plaintiff alleges he "was fired in retaliation for pointing out racial inequities in the workplace and for reporting specific instances of racial misconduct." *Id.* ¶ 152.

### E.  Procedural History

On November 10, 2020, Plaintiff filed a Complaint in the Superior Court of New Jersey, Middlesex County, which Defendants removed to this Court on the basis of diversity jurisdiction on December 11, 2020. *See* ECF No. 1. Defendants moved to dismiss the Complaint on December 30, 2020. ECF No. 6. On January 19, 2021, Plaintiff filed the Amended Complaint, asserting two counts: (I) retaliation/improper reprisal in violation of the NJLAD and (II) aiding and abetting violations of the NJLAD as to the Individual Defendants. *See* Am. Compl. ¶¶ 158–67. Defendants moved to dismiss the Amended Complaint on February 23, 2021. ECF No. 19 ("Defs. Mot.").

Plaintiff opposed the motion on April 19, 2021.  ECF No. 24 ("Pl. Opp'n").  Defendants filed a reply on April 26, 2021.  ECF No. 25 ("Defs. Reply").

## II.   DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint on several grounds, including lack of personal jurisdiction, improper venue, and failure to state a claim.  *See* Defs. Mot. at 4–17.  In sum, Defendants argue that they are Texas citizens with no connection to the forum state other than the fact that Plaintiff was permitted to work remotely for TMF from his office in New Jersey.  Defendants further assert that Plaintiff's unilateral activity in New Jersey—that is, conducting his daily work for TMF via email, phone, and video-conference—is a wholly insufficient basis to hale them into a New Jersey federal court or to state a claim under New Jersey law.  In the alternative, Defendants argue that the Court should transfer the case to the Western District of Texas.  *See id.* at 18–24.

Because Plaintiff cannot demonstrate Defendants have sufficient minimum contacts with New Jersey, the Court finds that it lacks personal jurisdiction over Defendants with respect to Plaintiff's employment dispute.

### A.   Personal Jurisdiction – Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a prima facie case of personal jurisdiction."  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted).  And "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is

8

required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).  Still, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).  Additionally, "by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)).  And "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted).  More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink*

*Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, as Plaintiff alleges, Defendants are citizens of Texas, and thus Defendants are not subject to the general jurisdiction of this Court. The only potential basis for exercise of personal jurisdiction over Defendants is therefore specific jurisdiction.

The inquiry as to whether a court may exercise specific jurisdiction over a non-resident defendant is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). "Physical entrance is not required," however, "what is necessary is a deliberate targeting of the forum." *Id.* (citations omitted).

Here, Plaintiff fails to establish a *prima facie* case of specific personal jurisdiction over Defendants. According to Plaintiff, by hiring him as a remote employee, who worked almost exclusively from his office in New Jersey, "Defendants purposefully availed themselves of the benefits of conducting business in New Jersey and purposefully directed their activities to New Jersey." Am. Compl. ¶ 22. But the specific allegations set forth by Plaintiff fall short of

10

demonstrating that Defendants conducted any business in New Jersey or targeted New Jersey in any purposeful way beyond permitting Plaintiff to work remotely as a matter of his own convenience. Plaintiff alleges that "Defendants engaged in continuous phone calls, letters, videoconferences calls, and emails to Plaintiff while he was in New Jersey" and that "it was an express and substantial condition of Plaintiff's employment that he work from his office in New Jersey." Am. Compl. ¶¶ 16, 19. Plaintiff further alleges that "Defendants provided Plaintiff with a company-issued laptop and remote access software for Plaintiff to work from his desk in New Jersey." However, none of these allegations demonstrate that Defendants availed themselves of the privileges of conducting business in New Jersey.[2] Moreover, according to Defendants, "TMF has never had an office in the State of New Jersey" and "conducts no business in the State of New Jersey." Thomas Decl. ¶¶ 10–11. In addition, Defendants aver that "[t]hroughout Plaintiff's employment with TMF, he was a remote employee based exclusively out of TMF's office in Austin, Texas" and that "all in-person meetings and events in which Plaintiff participated during his employment with TMF occurred in Texas." *Id.* ¶ 9. As such, "Plaintiff's physical location in New Jersey is the only factor that connects this dispute to New Jersey." *Magill v. Elysian Global Corp.*, No. 20-06742, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021) (dismissing claims against non-resident defendants for lack of personal jurisdiction); *see Walburn v. Rovema Packaging Machines, L.P.*, No. 07-3692, 2008 WL 852443, at *7 (D.N.J. Mar. 28, 2008) (finding that "Plaintiff's residence in New Jersey was a unilateral act in the sense that the contacts with the

---

[2] Lacking allegations as to TMF's business activities targeting New Jersey, Plaintiff alleges that "Defendant TMF has a wholly-owned subsidiary, C2C Innovative Solutions, Inc." which may engage in Medicare Part B claims review for a region that includes New Jersey. *See* Am. Compl. ¶ 23. Even accepting Plaintiff's vague allegations as true, Plaintiff fails to explain the significance of a subsidiary's potential business dealings with respect to the Court's exercise of jurisdiction over Plaintiff's former employer, TMF, and the Individual Defendants.

11

forum occurred as a result of Plaintiff's unilateral choice of residence" and that "[s]uch arbitrary contacts are insufficient to establish personal jurisdiction").

Because Plaintiff represents Defendants' only connection to the State of New Jersey, the cases Plaintiff cites in favor of his specific jurisdiction arguments are inapposite. Plaintiff principally relies on *Chadwick v. St. James Smokehouse, Inc.*, No. 14-2708, 2015 WL 1399121 (D.N.J. Mar. 26, 2015) and *Castoria v. Berlin Int'l Colorado, L.L.C.*, No. 16-01704, 2018 WL 3000173 (D.N.J. June 14, 2018), emphasizing that both cases stand for the proposition that New Jersey has a strong interest in protecting New Jersey citizens working remotely for out-of-state employers. *See* Pl. Opp'n at 10–12. But, in both *Chadwick* and *Castoria*, the out-of-state employers had significant contacts with New Jersey and specifically targeted New Jersey through business activities beyond merely employing a New Jersey resident.

In *Chadwick*, personal jurisdiction over an out-of-state employer in an employment dispute was proper where the employer had "done business" with specific "New Jersey businesses" on "numerous occasions." 2015 WL 1399121, at *4. The employer even "once had to appear in a small claims proceeding in New Jersey . . . in order to resolve an unpaid debt with a New Jersey customer." *Id.* Plaintiff has set forth no such allegations or evidence in this matter, relying solely on the lone analogous fact that the plaintiff in *Chadwick* was also a remote employee. Similarly, in *Castoria*, personal jurisdiction over an out-of-state employer was proper where the employer hired a New Jersey resident as its Chief Financial Officer, "sent its former CEO to New Jersey to discuss details prior to hiring," and utilized Plaintiff's residence for meetings. 2018 WL 3000173, at *5. Additionally, the plaintiff in that case alleged that the employer had sought to use his "extensive contacts in New Jersey" to facilitate "networking opportunities for commerce and other business relationships in [New Jersey] and [the] greater tristate area in general." *Id.* Here, Plaintiff

12

does not offer any information pointing to TMF's intent to avail itself of the New Jersey business market or that his location in New Jersey amounted to a strategic business decision on the part of TMF.

Courts in this Circuit and elsewhere have consistently recognized that personal jurisdiction "depends upon 'the relationship among the defendant, the forum, and the litigation.'" *IMO*, 155 F.3d at 259 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). Importantly, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State," and the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (internal quotations and citations omitted) (emphasis in original). Plaintiff's theory of personal jurisdiction ignores these tenets, seeking to have Defendants litigate in his home state based on his presence alone. But "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284. Indeed, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Simply put, "[t]he mere fact that [TMF] has a remote employee in [New Jersey] does not mean that it has purposefully availed itself of that employee's home state." *Carlson v. Colorado Firearms, Ammunition and Accessories, LLC*, No. 22-1686, 2022 WL 11398472, at *4 (E.D. Pa. Oct. 19, 2022) (dismissing claims against out-of-state employer for lack of personal jurisdiction). Accordingly, absent allegations or evidence of Defendants' purposeful targeting of New Jersey, the Court finds that it lacks personal jurisdiction over Defendants.

### B.     Transfer Pursuant to 28 U.S.C. § 1631

Next, the Court must address whether dismissal or transfer of the Amended Complaint is warranted. Here, Defendants have proactively identified the Western District of Texas as a federal

district in which this action could have been brought. *See* Defs. Mot. at 19. Plaintiff does not dispute Defendants' assertion.

In relevant part, 28 U.S.C. § 1631 provides that where a:

> court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631; *see Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (explaining that 28 U.S.C. § 1631 "governs transfer when there is 'a want of jurisdiction'"). Thus, to affect a transfer pursuant to § 1631, the Court must find (1) that the action "could have been brought" in the transferee district and (2) that transfer is in the interest of justice. *See*, *e.g.*, *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109–10 (3d Cir. 2009).

To satisfy the first prong of the transfer venue inquiry, the Court must find that the transferee court has (1) subject matter jurisdiction, (2) proper venue, and (3) personal jurisdiction. *American Fin. Res., Inc., v. Smouse*, No. 17-12019, 2018 WL 6839570, at *5 (D.N.J. Dec. 31, 2018) (citing 17 Moore's Federal Practice § 111.53). First, as to subject matter jurisdiction, Plaintiff brings his claims in federal court under diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Am. Compl. ¶ 8. Plaintiff alleges damages that exceed $75,000.00. *Id.* ¶ 9. Therefore, the Court concludes that the Western District of Texas would have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Second, venue is proper in a judicial district in which any defendant resides if all defendants are residents of the State in which the district is located. 28 U.S.C. § 1391(b)(1). Here, all Defendants are either residents of the state of Texas or maintain their principal place of business in Texas. Am. Compl. ¶ 8; Thomas Decl. ¶¶ 3, 6; Lovato Decl. ¶ 2, Manley Decl. ¶ 2. Moreover, Defendant TMF maintains its headquarters in Austin, Texas,

which is within the Western District of Texas. Am. Compl. ¶ 2; Thomas Decl. ¶ 7. The Court therefore finds that venue is proper in the Western District of Texas. Finally, given that Defendants are citizens of Texas, the Court finds that they will also be subject to personal jurisdiction.

Based on the record before it, including the parties' submissions on the motion and the Amended Complaint, the Court therefore concludes that this action could have been brought in the Western District of Texas.

Having found the Western District of Texas is proper, the Court next considers whether the interests of justice favor the transfer by weighing convenience and fairness on a case-by-case basis. *See D'Jamoos*, 566 F.3d at 110. "Determining where the interest of justice lies is left to the district court's discretion." *Kim v. Korean Air Lines Co., Ltd.*, 513 F. Supp. 3d 462, 476 (D.N.J. 2021) (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) ("Since the term 'interests of justice' is vague, district courts have a good deal of discretion in deciding whether to transfer a case.") (collecting cases from the Fourth, Eighth, and Ninth Circuits)). Where, as here, jurisdiction is available in another court, "[n]ormally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *SM Fin. Servs. Corp. v. Blue Cross Blue Shield of Tex.*, No. 19-17497, 2020 WL 7869213, at *2 (D.N.J. July 16, 2020) (internal quotations and citation omitted). "Transfer, as opposed to dismissal, also has the benefit of maintaining continuity and avoiding litigation over whether a refiled action is time-barred." *Kim*, 513 F. Supp. 3d at 476 (citing *Kurzweil v. Amtrak*, No. 19-19388, 2020 WL 5760423, at *4 (D.N.J. Sept. 28, 2020) ("[The interest of justice] requirement ordinarily will be satisfied if the statute of limitations has expired subsequent to the time of the original filing, so that transfer, rather than dismissal, will preserve the plaintiff's cause of action.")). For those reasons, a transfer rather than dismissal is in the interest of justice.

For these reasons, rather than dismiss Plaintiff's claims, the Court concludes that it is appropriate to transfer the matter to the Western District of Texas, where Plaintiff's employment dispute with Defendants may be heard on the merits.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for lack of personal jurisdiction is **GRANTED**. In lieu of dismissal, however, the Court will transfer the matter to the Western District of Texas. An appropriate Order will follow.

Date: **March 22, 2023**

                                                        s/ Zahid N. Quraishi
                                                        **ZAHID N. QURAISHI**
                                                        **UNITED STATES DISTRICT JUDGE**